1  saw her vehicle.

2      Q.  Okay.  When you first saw her vehicle,

3  what was it doing?

4      A.  Traveling in a straight line on Plumeria

5  Boulevard.

6      Q.  In other words, it was going straight as

7  far as your concern?

8      A.  Yes.

9      Q.  Now, as you're approaching it, before

10  you got to it, did you ever see it make any

11  turn?

12      A.  Before I got to it?

13      Q.  Yes.

14      A.  No.

15      Q.  So, what you're telling me is, at the

16  time you reached her vehicle, is the time she

17  first started making her turn; is that correct?

18      A.  I believe that I was already encroaching

19  upon her from her left as she turned in front of

20  me.

21      Q.  Okay.  Now, as you are approaching her,

22  did you honk you horn in any way from the time

23  you first saw her to the time of the impact.

24      A.  Yes, I honked my horn.

25      Q.  Okay.  How many times did you honk your

1  horn?

2      A.  I don't recall.

3      Q.  Was it more than once?

4      A.  I'm sure that it was.

5      Q.  But you can't recall how many times?

6      A.  No.

7      Q.  Okay.  Now, were there any other

8  vehicles in any of the streets that vent into

9  this intersection at the time you first saw Mrs.

10 Watson?

11     A.  I don't recall.

12     Q.  Will it be fair to say that as you were

13 trying to pass her, what you did was, you were

14 in her lane, but then moved to the lane to your

15 left, in other words the oncoming lane, to

16 attempt to pass her; is that correct?

17     A.  Yes, that is correct.

18     Q.  And, is it fair to say that you are

19 trying to be aware of the traffic at that

20 intersection who's coming in from Ulithi and

21 even beyond the intersection on Plumeria?

22     A.  The Ulithi intersection has stop signs

23 for traffic traveling on Ulithi, so that if

24 there was any vehicles there, they would have

25 been stopped, and I do recall checking to make

1   sure that the oncoming traffic was clear.

2   Q.  And that required you to look ahead of

3   the intersection, is that correct?

4   A.  Yes.

5   Q.  Okay.  Because you didn't want to bump

6   into oncoming traffic when you were in the lane

7   of the oncoming traffic as you were trying to

8   pass Mrs. Watson; is that correct?

9   A.  Yes.

10  Q.  Okay.  Now, you've had a chance to

11  review this report before; is that correct?

12  A.  I've briefly looked over it this

13  morning.

14  Q.  Okay.  You know, on page 5, there's a

15  technical evaluation.

16  A.  Okay.

17  Q.  And, the examiner appears that he's

18  testing the turn signal of Mrs. Watson's car; do

19  you see that?

20  A.  In item number 5?

21  Q.  Yes, sir.

22  A.  (Reviews document) Yes.

23  Q.  And he made a conclusion that the bulb

24  met all the characteristics of one being on at

25  the time of impact.  Do you see that?

PALABRA
Jeffrey W. Anderson
Electronic Verbatim Reporter/Notary Public
Tel.(671)687-6099 • Fax (671)734-3440

1   vehicle or the traffic in front of the

2   intersection on Plumeria; is that correct?

3      A.  I don't recall exactly the sequence of

4   where my vision was directed.

5      Q.  Would that seem logical to you?

6      A.  It would have seemed logical for me to

7   continue checking the entire intersection that I

8   was approaching as well as the vehicle in front

9   of me that I was attempting to go around, as

10   well as any oncoming traffic.

11      Q.  Yes, sir. Okay, now, what is the legal

12   speed on the roads leading up to this

13   intersection and at the intersection? Is it 15

14   miles per hour as the police report indicates?

15      A.  The posted speed limit is 15 miles an

16   hour.

17      Q.  Okay.  That's confirmed on page 3 of

18   this report; is that correct?

19      A.  (Reviews document) Whereabouts are you

20   looking on page 3?

21      Q.  I'm looking at the top portion,

22   Contributing Factors and Driver's Action Before

23   Accident.  It says lawful speed miles per hour

24   the last item.

25      A.  Yes, I see that now.  Yes, it does state

1     Q.   Okay.   What was you disagreement?

2     A.   Well, as stated in my statement on page

3 14, I estimated my speed at 20 miles an hour.

4     Q.   Okay.   Was this speed that you were

5 traveling at, at the time your vehicle hit Mrs.

6 Watson?

7     A.   To the best of my recollection.

8     Q.   Alright.   Now, did you break at all

9 before you vehicle hit Mrs. Watson's?

10     A.   Yes.

11     Q.   And did you car slow down as the result

12 or your braking?

13     A.   Yes.

14     Q.   Did you have to tap your brakes to try

15 to avoid this accident or did you slam on them.

16     A.   I did neither.   I applied pressure to

17 them until they... until the braking happened.

18 If you're asking...

19     Q.   Okay.

20     A.   ...if my breaks locked up; no.

21     Q.   Okay, so is it fair to say that you

22 applied very firm pressure to your brakes?

23     A.   I guess that's fair to say, sure.

24     Q.   Okay.   And when you applied that brake

25 some pressure, did you feel that the braking

1          (Back on the record)

2  BY MR. WONG:

3          Q.  Mr. Pascoe, did you understand, back at

4  the time of this accident that it was, according

5  to the rules of the road, improper to pass a

6  vehicle, while that vehicle is in an

7  intersection?

8          A.  Yes, I understood that rule of the road.

9          Q.  In terms of any regulations or other

10 law, applicable to Andersen Air Force Base, was

11 there any regulation or other law that allowed

12 you as the Acting Fire Chief or Deputy Fire

13 Chief at Andersen to pass vehicles at

14 intersections, as far as you know?

15         A.  Not that I'm aware of.

16         Q.  And I'm talking about in your P.O.V., in

17 your personal vehicle.

18         A.  That's understood.

19         Q.  Okay.  And was there any law or

20 regulation that allows you, as the Acting Fire

21 Chief or Deputy Fire Chief at the time of this

22 accident, to exceed the lawful speed on the base

23 in traveling in your P.O.V., whether it be back

24 to your fire station, or any other place on

25 base.

1    A.  Not that I'm aware of.

2    Q.  Have you ever consulted with the base

3    legal office at Andersen Air Force Base about

4    this accident in which you're involved with Mrs.

5    Watson?

6    A.  They have called and inquired about it,

7    yes.

8    Q.  But, have you ever gone to them

9    directly?

10   A.  I may have, but I don't recall.

11   Q.  Who at Base legal did you talk to, if

12   you recall a name or rank of a person?

13   A.  I don't know.

14   Q.  When was this?

15   A.  Again, I don't recall.  I know that I've

16   had conversations with personnel up at the base

17   legal office about this accident.   But who

18   specifically  I  spoke  with  or  when  those

19   conversations occurred, I don't recall.

20   Q.  Did you give any written statement about

21   the facts of this accident, including where you

22   were before the accident and where you were

23   going to anyone at the base legal office?

24   A.  Not that I recall, no.

25   Q.  Did you tell the folks at the base legal



**DEPARTMENT OF THE AIR FORCE**

**AIR FORCE LEGAL SERVICES AGENCY (AFLSA)**

AFLSA/JACT
1501 Wilson Boulevard, Room 835
Arlington, VA 22209-2403

*1 9* AUG 2002

Wayson W. S. Wong, Esquire
142 Seaton Blvd, Suite 203
Hagatna, Guam 96910

Re: Claim of Shaunannette D. Watson
Air Force Claim No. Andersen AFB 02-143

Dear Mr. Wong

This letter is a follow-up to Major Fillman's letter of 10 July 2002. To date we have not received proof of your authorization to represent Mrs. Watson, nor the information requested regarding lost wages, medical expenses and all non-Government medical records and reports for treatment for Mrs. Watson's injury. Not wishing to delay resolution of this claim any longer, I decided to evaluate Mrs. Watson's claim under the provisions of the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671-2680) based on the information available to me. To that end, I offer $5,000.00 to settle Mrs. Watson's claim arising from an automobile accident on Andersen AFB, Guam, on 13 March 2000.

Although the amount offered is considerably less than the amount demanded, the available evidence does not support the damages claimed. Mrs. Watson claims she has been diagnosed with cervical, thoracic and lumbar strain, with a possible herniated cervical disc due to the accident. Her medical records do not support this claim. An MRI, taken on 8 February 2002, indicates she has "spondylotic changes to her cervical spine." Spondylosis is a degenerative disease and Mrs. Watson's medical records indicate she sought treatment for back pain in the same location in October 1998, seventeen months prior to the accident. Additionally, Mrs. Watson has several risk factors for spondylosis. Her weight and her job as a secretary, which could involve prolonged sitting, are factors that can lead to spondylosis. Also, Mrs. Watson had expressed concern to a medical practitioner during her annual exam, in May 2001, that her back pain was due to her breast size.

In addition to the question of causation, is the threshold issue of scope of employment. Immediately prior to the accident the Air Force member was eating lunch in his quarters. He was returning to the fire station at the time of the accident in his privately owned vehicle. This clearly raises the issue of scope of employment. With this in mind, I note that the Air Force member's insurance carrier already settled property damage claims related to Mrs. Watson's accident and a claim the United States asserted against it for medical treatment Mrs. Watson received from military medical facilities shortly after the accident.

**EXHIBIT " C "**

The above being said, I am aware that all cases carry litigation risk and that settlement for a reasonable sum furthers the goal of avoiding protracted litigation. It is also clear to me that the accident caused your client pain and suffering for a limited duration following the accident. After considering the above factors, the fact your client had out-of-pocket medical expenses of less than $300.00, and similar cases, I believe $5,000.00 is fair compensation for Mrs. Watson's injuries.

If Mrs. Watson agrees to accept $5,000.00 in full and final settlement of all claims arising out of this accident, she should sign the original and two copies of the attached settlement agreement in ink. All three signed agreements should then be returned to me at the address shown above. The fourth copy of the agreement is for your records. Upon receipt of the properly completed agreements and your authorization to represent Mrs. Watson, we can process the claim payment.

The Treasury Department now requires that settlement payments be made by direct deposit unless another method is justified. Therefore, please type in the information for the appropriate account in the space provided on Attachment 1 to the settlement agreement. In addition, 31 U.S.C § 3325(d) requires that the Taxpayer Identification Number (TIN) of the payee be included on the voucher we send to the Treasury Department for payment.

Please respond to this offer within three weeks. If I don't hear from you within that time I will continue processing the claim.

Sincerely

JOHN F. McCUNE, Lt Col, USAF
Chief, General Torts Branch
Tort Claims and Litigation Division

Attachment:
Settlement Agreement (4 copies)

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 10 2006

Teresita S. Perez

# VERNIER & MAHER, LLP

D. Paul Vernier, Jr.
John B. Maher

115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagatna, Guam 96910-5004
Telephone: (671) 477-7059
Facsimile: (671) 472-5487
Email: vernier@ite.net

Louie J. Yanza
Michael D. Flynn, Jr.
Terence E. Timblin

---

July 22, 2004

**VIA FACSIMILE – 477-4455**

Wayson W.S. Wong, Esq.
**LAW OFFICES OF WAYSON WONG**
142 Seaton Boulevard, Suite 203
Hagatna, Guam 96910

RE:   **SHAUNANNETTE D. WATSON, ET AL. v. GARY M. PASCOE, ET AL.**
      **SUPERIOR COURT OF GUAM, CIVIL ACTION NO. CV0318-02**

Dear Mr. Wong:

This is to follow up and confirm our telephone conversations of July 19 and 20, 2004.

Enclosed is a copy of the declarations page of the policy in question (1 page); all documents regarding Mr. Watson's property damage claim, minus the four pages attached as exhibits to our Motion (6 pages); and all documents regarding the Federal Government's claim for reimbursement for the medical treatment of Mrs. Watson (15 pages).

You have agreed to provide me with all documents relating to your Federal Tort Claim.

These exchanges shall be treated as if formal Requests for Production of Documents, pursuant to Rule 34, have been made, and no objections are waived by the act of production.

As we have acknowledged, the insurer has settled the property damage claim and the Federal reimbursement claim and there is no need to depose anybody from Guam Insurance Adjusters, Inc.

You have indicated that you were unable to reach a settlement with the Federal Government on your Tort Claim, and that you elected to not file suit against the Government.

We have attempted to contact Mr. Pascoe in order for you to take his deposition and have been informed that he is on leave until August 1, 2001. We will attempt to have him available sometime in September.



Both parties agree to any further continuances in order to insure that you shall have adequate time to prepare and file your Opposition to our Motion and that we shall have adequate time to prepare and file our Reply.

If this does not correctly reflect our agreement, please advise.

Sincerely,

**VERNIER & MAHER, LLP**

Terence E. Timblin

Enclosures as stated.

cc: Ms. Anita Fisher

do hereby certify that the forego...
...s a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagåtña, Guam

JUL 1 0 2006

Teresita S. Perez
...Superior Court of Guam

# IN THE SUPERIOR COURT OF GUAM

SHAUNANNETTE D. WATSON and
GEORGE L. WATSON,

        Plaintiffs,

        vs.

GARRY M. PASCOE, AMERICAN
HOME ASSURANCE COMPANY,
and DOE DEFENDANTS 1 – 10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO.  CV 0318-02

DECLARATION OF
WAYSON W. S. WONG

## DECLARATION OF WAYSON W. S. WONG

Wayson W. S. Wong declares as follows.

1.     I have been the attorney for the plaintiffs in this case.

2.     With respect to the letters described in this declaration, I either wrote them or received them for this case from the authors described.

3.     With respect to the deposition of Garry M. Pascoe taken for this case on August 12, 2004, I took it.

4.     Exhibit "A" to the foregoing memorandum is a duplicate of the October 31, 2004 letter I wrote to attorney Terence Timblin for this case and its described enclosure. The facts set forth in that letter are true and correct to the best of my belief.

5.     Exhibit "B" to the foregoing memorandum is a excerpt from Mr. Pascoe's deposition including duplicates of its title page and pp. 14, 19 - 20, 23 - 24, 32, 35 - 36, 42 - 48, 50, 54 and 58 - 59 of that deposition.

6.     Exhibit "C" to the foregoing memorandum is a duplicate of the 19 Aug 2002 letter that Lt. Col. John F. McCune sent to me for this case.

7.     Exhibit "D" to the foregoing memorandum is a duplicate of the July 22, 2004 letter that attorney Timblin sent to me for this case.

I declare under penalty of perjury that the foregoing are true and correct.

Executed:  Honolulu, Hawaii, November 1, 2004.

Wayson W. S. Wong
_____
Wayson W. S. Wong

, do hereby certify that the foregoing
is a full true and correct copy of the
original on file to the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 1 8 2006

Teresita S. Perez
Clerk, Superior Court of Guam

# IN THE SUPERIOR COURT OF GUAM

SHAUNANNETTE D. WATSON and ) CIVIL CASE NO. CV 0318-02
GEORGE L. WATSON, )
) CERTIFICATE OF SERVICE
            Plaintiffs, )
)
    vs. )
)
GARRY M. PASCOE, AMERICAN )
HOME ASSURANCE COMPANY, )
and DOE DEFENDANTS 1 – 10, )
)
          Defendants. )
_____ )

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, a copy of foregoing documents, was

duly served by U. S. mail, postage prepaid (with a personal delivery the following day)

or personal delivery, upon the following at his last known address.

        Terence E. Timblin, Esq.
        Vernier & Maher LLP
        115 Hesler Place, Ground Floor
        Gov. Joseph Flores Bldg.
        Hagatna, Guam  96910

        Attorney for Defendants Garry M. Pascoe and
        American Home Assurance Company

Dated:  Honolulu, Hawaii, November 1, 2004.

               *Wayson W. S. Wong*
               Wayson W. S. Wong
               Attorney for Plaintiffs

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 1 0 2006

Teresita S. Perez

Wayson W. S. Wong, Esq.
Law Offices of Wayson Wong
142 Seaton Blvd., Suite 203
Hagatna, Guam 96910
Phone: 475-7448

Attorney for Plaintiffs



## IN THE SUPERIOR COURT OF GUAM

SHAUNANNETTE D. WATSON and )  CIVIL CASE NO. CV 0318-02
GEORGE L. WATSON,                        )
                                                              )  PLAINTIFFS' MOTION FOR LEAVE
                    Plaintiffs,                      )  TO FILE FIRST AMENDED COMPLAINT;
                                                              )  EXHIBIT "A"; MEMORANDUM IN
                                                              )  SUPPORT OF MOTION; CERTIFCATE
        vs.                                               )  OF SERVICE
                                                              )
GARRY M. PASCOE, AMERICAN   )
HOME ASSURANCE COMPANY,      )
and DOE DEFENDANTS 1 – 10,          )
                                                              )
                    Defendants.                    )
_____ )

## PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiffs Shaunannette D. Watson and George L. Watson (collectively, the "Watsons"), by and through their attorney, Wayson W. S. Wong, Esq., of the Law Offices of Wayson Wong, A Professional Corporation, move this Court for an order granting plaintiffs leave to file a first amended complaint with the amendments to the Complaint filed herein as shown in Exhibit "A" attached.

This motion is made pursuant to Rule 15 of the Rules of Civil Procedure for the Superior Court of Guam ("GRCP").

This motion is based on the record of this case and the documents attached to it.

Dated:  Honolulu, Hawaii, November 2, 2004.

Wayson W. S. Wong
Wayson W. S. Wong
Attorney for Plaintiffs

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 1 0 2006

Teresita S. Perez

ORIGINAL

Terence E. Timblin
**VERNIER & MAHER, LLP**
**115 Hesler Place, Ground Floor**
**Governor Joseph Flores Building**
**Hagåtña, Guam 96910**
**Telephone No.: (671) 477-7059**
**Facsimile No.: (671) 472-5487**

**Attorney for Defendants**
**GARRY M. PASCOE and**
**AMERICAN HOME ASSURANCE COMPANY**

FILED
SUPERIOR COURT
OF GUAM

2004 NOV -5 PM 2: 31

CLERK OF COURT
BY:

## SUPERIOR COURT OF GUAM

SHAUNANNETTE D. WATSON and
GEORGE L. WATSON,

        **Plaintiffs,**

       **vs.**

GARRY M. PASCOE, AMERICAN
HOME ASSURANCE COMPANY,
and DOE DEFENDANTS 1-10,

        **Defendants.**
_____/

**CIVIL CASE NO. CV0318-02**

**OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT**

Defendants GARRY M. PASCOE ("PASCOE") and AMERICAN HOME

ASSURANCE COMPANY ("AMERICAN HOME"), through counsel, VERNIER &

MAHER, LLP, by Terence E. Timblin, Esq., hereby enter their opposition to Plaintiffs'

Motion for Leave to File First Amended Complaint filed in the above-referenced action

on November 3, 2004.

As more fully set forth in Part I of the Reply Memorandum in Support of

Defendants' Motion for Summary Judgment filed contemporaneously herewith, and

Terence E. Timblin
VERNIER & MAHER, LLP
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorney for Defendants GARRY M. PASCOE and
AMERICAN HOME ASSURANCE COMPANY

FILED
SUPERIOR COURT
OF GUAM

2004 NOV -5 PM 2: 30

CLERK OF COURT
BY: _____

## SUPERIOR COURT OF GUAM

SHAUNANNETTE D. WATSON and
GEORGE L. WATSON,

                Plaintiffs,

                vs.

GARRY M. PASCOE, AMERICAN
HOME ASSURANCE COMPANY,
and DOE DEFENDANTS 1-10,

                Defendants.

CIVIL CASE NO. CV0318-02

REPLY MEMORANDUM IN SUPPORT
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Defendants GARRY M. PASCOE ("PASCOE") and AMERICAN HOME
ASSURANCE COMPANY ("AMERICAN HOME") hereby submit their Reply
Memorandum in Support of their Motion for Summary Judgment filed in the above-
referenced matter.

Defendants PASCOE and AMERICAN HOME would initially note an obvious
falsehood at page 3 of Plaintiffs' Opposition, in which it is claimed that Plaintiffs
requested a copy of the policy on October 14, 2004 and makes reference to a letter
attached as Exhibit "A". The letter attached as Exhibit "A" is dated October 31, 2004,
Hawaii time, which was November 1, 2004, Guam time. For whatever reason, the
only part of the policy in the possession of AMERICAN HOME's local agent, Guam

which is adopted and incorporated herein, the addition of allegations that the United States is an additional insured is futile, as the claim against the United States is barred by 28 U.S.C.§2401(b).

Respectfully submitted this _4th_ day of November, 2004.

> **VERNIER & MAHER, LLP**
> **Attorneys for Answering Defendants**
> **GARRY M. PASCOE and AMERICAN HOME**
> **ASSURANCE COMPANY**

**BY:** _____
       TERENCE E. TIMBLIN

do hereby certify that the forego...
...s a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 10 2006

Teresita S. Perez

Insurance Adjusters, Inc., is the Declarations page, a copy of which is attached hereto, marked Exhibit "A" and incorporated herein by this reference. A copy of the Declarations Page was provided to Plaintiffs' counsel on July 22, 2004. Exhibit "D" to Plaintiffs' Opposition, paragraph 2. This office did not seek a full copy of the policy as it was not necessary for the purposes of defending this action and as Plaintiffs have never proffered a discovery request for it. For the reasons set forth below, the precise language of the coverage provisions is irrelevant. However, should a formal Request for Production of Documents be made, a full copy will be sought.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  UNITED STATES AS ADDITIONAL INSURED.

Plaintiffs speculate that the coverage language includes as insureds, "any person or organization" that may be liable for the acts or omissions of a covered person. Whether it does or does not makes no difference.

### A.  ANY RIGHT TO COVERAGE RESTS SOLEY WITH THE FEDERAL GOVERNMENT.

As acknowledged at page 7 of the initial Memorandum, there is split of authority as to whether the United States may claim the status of an additional insured should it be sued under the Federal Tort Claims Act. However, it was also pointed out that it was for the Federal Government to assert such coverage, not the initial plaintiff. In both of the cases cited in the letter attached as Exhibit "A" to Plaintiffs' Opposition, the Federal Government filed third party complaints. So far as Plaintiffs are concerned, 28 U.S.C. §2679(b)(1) unambiguously provides that a Federal Tort Claim "is exclusive of any other civil action or proceeding for money damages by reason of the same

subject matter", and "Any other civil action . . . is precluded".  "Any other civil action" necessarily includes this one.

### B. THE FEDERAL GOVERNMENT CANNOT BE HELD LIABLE DUE TO PLAINTIFFS' FAILURE TO FILE SUIT AGAINST IT WITHIN THE STATUTE OF LIMITATIONS .

Even if the United States is an additional insured and Plaintiffs had standing to sue anybody other than the United States, the United States has an absolute defense in that Plaintiffs failed to file suit within the time provided by 28 U.S.C. §2401 after their tort claim was denied.  Plaintiffs filed a Federal tort claim with the United States Air Force on March 12, 2002.  See; Exhibit "E" to Defendants PASCOE and AMERICAN HOME's initial Motion.   The Air Force, noting that Plaintiff SHAUNANNETTE WATSON's medical difficulties largely preexisted the accident, offered $5,000.00 to settle the claim on August 16, 2002.  See; Exhibit "C" to Plaintiffs' Opposition.  On April 3, 2003, the Air Force, noting that Plaintiffs had rejected the offer and failed to submit any further documentation, issued a final denial of the claim.  See; Exhibit "B" attached hereto and incorporated herein by this reference.  28 USC §2401(b) provides that a tort claim against the United States is barred unless suit is filed within six (6) months of the date of the mailing of the final denial of the claim.  This fact was also noted in the April 3, 2003 letter.  The deadline for filing suit was October 3, 2003. Astoundingly, Plaintiffs allowed this deadline to pass without filing suit.  See; Exhibit "D" to Plaintiffs' Opposition, paragraph 6.

The Guam Direct Action Statute, 22 GCA §18305, changes nothing.  It does not create a new and separate right of action against an insurance company.  It does

3

nothing more than relieve a plaintiff from personally serving and obtaining a judgment against the insured. It does not relieve a plaintiff from establishing that the insured is liable. *Vela v. Government Employees Insurance Company*, 395 F.2d 437 (9th Cir. 1968); *Degelos v. The Fidelity and Casualty Co. of New York*, 313 F.2d 809 (5th Cir. 1963) (Louisiana Direct Action Statute, the liability of the insurer rests on the legal liability of the assured and the claimant stands in the shoes of the assured). If by law there can be no recovery against the insured, there can be no recovery against the insurer. *Capital Insurance and Surety Company, Inc. v. Kelley*, 361 F.2d 567 (9th Cir. 1966); *Vela*, *supra*. Any defense or immunity that is available to the insured is equally available to the insurer. See; Decision and Order of Judge Manibusan in *Cox & Houston v. Guam Power Authority, et al.*, Superior Court of Guam, Civil Action No. CV1591-02 (10/27/03), denying jury trial against insurer where none could be had against the insured, the Guam Power Authority; and the Order of the District Court of Guam in *He v. Government of Guam, et al.*, Civil Case No. 01-00068 (4/22/04), dismissing insurer from the case where its purported insured, the Government of Guam, was immune from suit in the District Court, attached hereto marked Exhibits "C" and "D", respectively, and incorporated herein by this reference.

In *Capital Insurance*, *supra*, the third party claimant sought recovery against the insurer under the Guam Direct Action Statute. The insurance policy provided that the insurer would "...indemnify the insured for all sums which he shall become legally obligated to pay as damage because of bodily injury...". The insured was deceased. Reversing the District Court judgment in favor of the third party claimant, the Court of

Appeals held that recovery against the insurer was barred, as the deceased insured did not and could not become "legally obligated to pay."[1]

In the instant case, neither Defendant PASCOE nor the United States can be "legally obligated to pay" damages. Defendant PASCOE as he was acting in the course of his federal employment, and the United States, because the statute of limitations as to it has expired.

## II. COURSE OF EMPLOYMENT.

Plaintiffs argue that Defendant PASCOE was not acting in the course of his employment as he was merely going to work rather than being at work. It is true that the general rule is that employees going to or from their place of employment in their personal vehicles are not considered to be acting in the course of their employment. 8 Am.Jur.2d, Automobiles and Highway Traffic, §780. However, this is based on the general fact that most employment is conducted at a fixed site such as a factory or office and that going to and coming from that fixed site is of no benefit to the employer beyond making it possible for the employee to provide his or her services. But when travel is an integral part of employment such as for sales personnel, the rule ceases to apply. Id. §782.

Counsel for Defendants PASCOE and AMERICAN HOME could find no cases on point, relating to the Federal Tort Claims Act, but the issue, of whether travel by a fireman from his or her home directly to a reported fire or other emergency is an integral part of his or her employment, has arisen numerous times in cases dealing

[1] The result in *Capital Insurance* was subsequently legislatively overruled by the enactment of a survivors' statute which made it possible for a decedent's estate to be sued, but this did nothing to change the basic proposition that, where an insured is immune for any reason, so is the insurer.

5

with coverage or lack thereof by Workers Compensation statutes and whether governmental immunity applies. These cases uniformly hold that it is.[2] *The Estate of Gary E. Soupene, et al. v. Robert A. Lignitz*, 960 P.2d 205 (Kan. 1998); *DeLong v. Miller*, 426 A.2d 1171 (Pa.Super. 1981); *LeFebvre v. Workmen's Comp.App.Bd.*, 69 Cal.2d 386, 388, 71 Cal.Rptr. 703 (1968); *Strickland v. Galloway*, 560 S.E.2d 448 (S.Car. 2002); *Matlock v. Hankel*, 707 So.2d 1016 (La.App. 1998); *Malone v. Jacobs*, 88 A.D.2d 927, 450 N.Y.S.2d 885 (1982); *Lightning Rod Mutual Insurance Company, et al. v. Shilling*, 83 Ohio Misc.2d 1, 677 N.E.2d 1266 (1993); *Held v. Rocky River*, 516 N.E.2d 1272 (Ohio App. 1986).

> Responding to emergency calls is an integral and necessary part of a volunteer firefighter's duties, which entails a special degree of inconvenience and urgency. When an emergency call is received, volunteer firefighters are expected to report either to the fire station or to the site of the fire. Volunteer firefighters have no set hours of employment, but rather are on call and assume the duties of their employment when they receive an emergency call and begin to respond.

> Responding to an emergency call is an activity contemplated by and causally related to the employment of a volunteer firefighter. In addition, an accident which occurs while responding to such an emergency both arises out of and is in the course of the employment. Soupene's accident arose out of the nature, obligations, and incidents of his employment, as he was required to proceed to the fire station or the location of the fire after receiving an emergency call. There is a rational causal connection between the accident and the conditions under which he was required to perform his duties. Furthermore, the

---

[2] These cases deal mostly with part time volunteer firemen who, unlike full time professional firemen who normally operate from a fixed fire station, will normally respond from wherever they happen to be when they get the call. This does not alter the applicability of these decisions to this case. While Defendant PASCOE was a full time professional fireman who spent much of his time at a fire station while on duty, he was on call 24 hours a day just like a volunteer fireman and was responding from a place other than a fire station.

6

accident occurred in the course of Soupene's employment, as he had assumed the duties related to his employment when he began responding the emergency call. *Estate of Soupene v. Lignitz*, supra at 211.

Since the furnishing of transportation to and from the scene of a fire saves the fire department the expense of transporting the volunteer fireman to and from a fire and also enables the fireman to proceed promptly and directly to and from the scene of the fire, it is self-evident that such a journey represents a substantial part of the volunteer fireman's service to the fire department and the community. Therefore it appears that the volunteer fireman's furnishing of his own transportation directly to and from the scene of the fire is incidental to his duties, and injuries sustained thereby arise out of and in the course of employment so as to be compensable under the South Carolina Workmen's Compensation Act. *Strickland v. Galloway*, supra at 449-50.

We also are firmly convinced that Mr. Hankel was acting within the course and scope of his employment with FPV and NOFD at the time his vehicle hit Ms. Matlock. FPV points out that Mr. Hankel was just arriving at the fire scene at the time his vehicle struck Ms. Matlock and that, usually, employees on their way from home to work are not considered to be within the scope and course of their employment. However, we do not believe that the response of a volunteer fireman to a fire is equivalent to an ordinary commute to work. The Supreme Court, in *Orgeron, on Behalf of Orgeron v. McDonald*, 93-1353 pp. 5- 8 (La.7/5/94), 639 So.2d 224, 227-28 has held that the "going and coming rule," under which an employee's travel from home to work and back is not usually considered to be within the course and scope of his employment, is not inflexible when the employee does not work on the employer's premises or have a fixed place of work. (discussion of *Orgeron* opinion omitted) Apparently, FPV volunteer firemen were expected to respond to fires directly from their homes (Mr. Hankel had his helmet, fire coat and gloves at home) and it is the nature of the situation that they will respond immediately and expeditiously. We believe that, when they so respond to a fire, they are in the course and scope of their employment with FPV and NOFD. *Matlock v. Hankel*, supra at 1019.

Obviously, a volunteer fireman cannot aid in the control or extinguishing of a fire unless he is able to travel to the site.

7

> Responding to a fire call is generally considered part of a volunteer fireman's duties. *Lightning Rod v. Shilling*, supra at 1269.

Plaintiffs have now had the opportunity to depose Defendant PASCOE and he has reaffirmed his Declaration to the effect that he was responding to an emergency. See; Exhibit "B" to Plaintiffs' Opposition. Plaintiffs have offered nothing to contradict either the Declaration or the deposition testimony. The fact that he simply heard about the emergency on his radio rather being specifically and personally summoned to it is irrelevant. He was on 24-hour call and was obligated to respond as soon as he became aware of it, regardless of how he became aware of it. In addition, he was the Fire Chief and there was nobody above him with authority to summon him. As for the fact that he intended to switch to an official vehicle when he got to the fire station, this was necessary in order to obtain access to the airfield (page 35) and because the official vehicle had items that he needed to properly respond. Page 36. The fact remains that the only reason that he was operating his personal vehicle in a residential area of Andersen Air Force Base at the time of the accident was that he was responding to an emergency.

### III.    WAIVER.

Plaintiffs repeat the argument made in their attorney's letter of March 20, 2004, attached as Exhibit "H" to the Defendants PASCOE and AMERICAN HOME's initial Motion, to the effect that payment of the property damage and medical expense claims amount to an acknowledgement of liability. This argument was fully refuted at pages 9 and 10 of the Defendants PASCOE and AMERICAN HOME's initial Motion.

8