3. Letter to Mikel W. Schwab, Assistant United States Attorney, from Terence E. Timblin dated August 26, 2004; and

4. Letter to Mikel W. Schwab, Assistant United States Attorney, dated September 21, 2004, with enclosure of Memorandum from Air Force Colonel John L. Eunice, III.

Dated this /5-/2 day of November, 2004.

**VERNIER & MAHER, LLP**
**Attorneys for Answering Defendants**
**GARRY M. PASCOE and AMERICAN HOME**
**ASSURANCE COMPANY**

BY: _____

TERENCE E. TIMBLIN

do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatña, Guam

JUL 1 0 2006

Teresita S. Perez

Terence E. Timblin
**VERNIER & MAHER, LLP**
**115 Hesler Place, Ground Floor**
**Governor Joseph Flores Building**
**Hagåtña, Guam 96910**
**Telephone No.: (671) 477-7059**
**Facsimile No.: (671) 472-5487**

**Attorney for Defendants GARRY M. PASCOE and**
**AMERICAN HOME ASSURANCE COMPANY**

6

## SUPERIOR COURT OF GUAM

| | |
|---|---|
| SHAUNANNETTE D. WATSON and GEORGE L. WATSON, | CIVIL CASE NO. CV0318-02 |
| Plaintiffs, | |
| vs. | **DEFENDANT AMERICAN HOME ASSURANCE COMPANY'S SUBMISSION OF INSURANCE POLICY** |
| GARRY M. PASCOE, AMERICAN HOME ASSURANCE COMPANY, and DOE DEFENDANTS 1-10, | |
| Defendants. | |

Defendant AMERICAN HOME ASSURANCE COMPANY ("AMERICAN HOME") hereby submits a copy of the insurance policy issued to Defendant GARRY PASCOE, which was in force at the time of the accident in question and which was received by AMERICAN HOME's local agent, Guam Insurance Adjusters, Inc., on December 3, 2004. An issue as to who is an insured was raised in the course of the Motion for Summary Judgment. Reference is made to Paragraph IV of the Insuring Agreements.

Dated this _7+h_ day of December, 2004.

**VERNIER & MAHER, LLP**
**Attorneys for Defendants GARRY M. PASCOE**
**and AMERICAN HOME ASSURANCE COMPANY**

do hereby certify that the fore...
s a full true and correct copy of the
original on file in the office of the
Clerk of the Superior Court of Guam.
Dated at Hagåtña, Guam.

JUL 1 0 2006

Teresita S. Perez

BY: _____
**TERENCE E. TIMBLIN, ESQ.**

1

**DECLARATION FOREIGN AUTOMOBILE POLICY**

AMERICAN HOME ASSURANCE
(ISSUING COMPANY)

NO. 06 700 946 RC No. 529471

262 41 5098

THESE DECLARATIONS WITH COMPANY POLICY FORM NO. 483 – 31c REVISION COMPLETE THE ABOVE NUMBERED POLICY.

| TRANS | STO | CO. | TERM | CURRENCY | P.O. | PRODUCER | COUNTRY | THE OCCUPATION OF THE NAMED INSURED IS (if married, and occupation of business) | Date of Birth | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Mo. | day | yr. |
| 2 | 2 | 3 | 39 | 1 | 1 | 26 | 507 | 10 GUAM | 507/0021 M1 M | | 14 | 58 |

| The Named Insured is: | | If Married, living with spouse? | | If Member of Armed Forces give Rank, Serial Number and Service Branch |
|---|---|---|---|---|
| Single | Married X | Yes X | No | E6 USAF |

**Item 1 — NAME OF INSURED AND ADDRESS**

GARRY PASCOE
1401 PANAPE BLVD
YIGO GUAM 96929

RECEIVED
DEC 03 2004
GUAM INSURANCE
ADJUSTERS

**BROKER**
International Insurance Underwriters, Inc.
P.O. Box 7729
Fredericksburg, Virginia 22404-7729

| | YES | NO |
|---|---|---|
| UNDERLYER REQUIRED | | |
| AGENT | | |

**Item 2** The Policy Period from 12 NOV, 1999 TO 12 NOV, 2000 12:01 A.M. Standard time at the address of the named insured as stated herein.

**Item 3** The insurance afforded is only with respect to such and so many of the following Coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such Coverage shall be as stated herein, subject to all of the terms of this policy having relation thereto.

| COVERAGES | | POOL | CLASS | LIMITS OF LIABILITY | PREMIUM | CARD |
|---|---|---|---|---|---|---|
| A. COMPREHENSIVE - LOSS OR DAMAGE TO THE AUTOMOBILE EXCEPT BY COLLISION OR UPSET BUT INCLUDING FIRE AND THEFT AMOUNT DEDUCTIBLE $ | 100 | 99 | 01 | $ | $ | 1 |
| B. COLLISION OR UPSET AMOUNT DEDUCTIBLE $ | 200 | 99 | 02 | $ | | 1 |
| C. MARINE SHIPMENT FROM TO (including war risk) ON OR ABOUT MANDATORY ($100.00 Deductible) UNDER DECK S.S. | | | 03 | $ | INCA | 1 |
| D. BODILY INJURY LIABILITY | | 99 | 11 | $ 25000 EACH PERSON / $ 50000 EACH ACCIDENT | $ | 1 |
| E. PROPERTY DAMAGE LIABILITY | | 99 | 11 | $ 30,000 EACH ACCIDENT | | 1 |
| F. MEDICAL PAYMENTS | | | 11 | EACH PERSON | NIL | |
| G. SPECIAL CHARGES UNINSURED MOTORISK | | 99 | | 15,000 PER PERSON / 30,000 EACH ACCIDENT | | 1 |
| SHORT TERM MINIMUM EARNED PREMIUM 20% OF ANNUAL PREMIUM | | | | TOTAL PREMIUM $ | COMM. 0000 | |

**Item 4** DESCRIPTION OF THE AUTOMOBILE AND THE FACTS RESPECTING ITS PURCHASE BY THE NAMED INSURED.

| YEAR MODEL | TRADE NAME | MODEL | TYPE OF BODY (LOAD CAP. IF TRUCK) (NO. OF PASS. IF BUS) | SERIAL NO. | ACTUAL CASH WHEN PURCHASED (INCL. EQUIPMENT) | PURCHASED NO. | YR. | IS AUTO FULLY PAID FOR? |
|---|---|---|---|---|---|---|---|---|
| 98 | NISSAN MAXIMA | | 4DR | JN1HU11P0JX8585 35 | TBA | TBA | | Y |

**Item 5** Loss if any under Coverages A, B, and C is payable to the named insured and

**Item 6** The purposes for which the automobile is to be used are "pleasure and business" unless otherwise stated herein. (a) The term "pleasure and business" is defined as personal, pleasure, family and business use. (b) The term "commercial" is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in Item 1, including occasional use for personal, pleasure, family and other business purposes. (c) Use of the automobile for the purpose stated includes the loading and unloading thereof.

**Item 7** The geographical area in which this policy applies is GUAM

**Item 8** (a) Except with respect to bailment lease, conditional sale, mortgage or other encumbrance, the named insured is the sole owner of the automobile, and (b) during the policy period his address and any

I do hereby certify that the foregoing is a full true and correct copy of the clerk of the Superior Court of Guam
Dated at Hagatña, Guam

**Item 9** Notice of accident or loss in the event of accident or loss covered hereunder, immediate notice is to be given to

GUAM INSURANCE & ADJUSTERS INC
P.O. BOX 822
AGANA, GUAM 96910

JUL 10 2006

**Item 10** This policy subject to attached Form Nos. 33152 37018-AH 39397 45050

Teresita S. Perez

2 - 01 AUTO

Countersigned this 1 day of OCTOBER 1999

AUTHORIZED REPRESENTATIVE
FILE

## EXCLUSION OF TYPHOON, WINDSTORM, HURRICANE, FLOOD OR TIDAL WAVE.

(For attachment only to Foreign Automobile Policy)

In consideration of the reduced premium charged, it is agreed that this policy does not apply under Coverage A to loss or damage, directly or indirectly, proximately or remotely, occasioned by or arising from or in consequence of typhoon, windstorm, hurricane, flood, or tidal wave, including wind-driven rain.

Nothing herein contained shall be held to vary, alter, waive or extend any of the Agreements, Conditions, Declarations, Exclusions, Limitations or Terms of the Policy, except as hereinabove set forth.

RECEIVED

DEC 0 3 2004

~~~~~~~~~~~~
ADJUSTERS

45090 (4/93) NS

do hereby certify that the ~~~~~~
.s a full true and correct ~~~~~~
original on file in the office ~~ ~~~
clerk of the Superior Court of Guam
Dated at Hagatna, ~~~~~~

JUL 1 0 2006

Teresita S. Perez
~~~~~, Superior Court of Guam

# AMERICAN HOME ASSURANCE COMPANY

A CAPITOL STOCK COMPANY

70 PINE STREET, NEW YORK, N.Y. 10270

Insurance brokered through

RECEIVED **International Insurance Underwriters**

a GEICO subsidiary
P.O. BOX 7729, Fredericksburg, VA 22404-7729

DEC 0 3 2004

ADJUSTERS

**NOTICE TO INSURED**

This is a Foreign Automobile Policy and does not cover in the United States of America or the Dominion of Canada.

**PLEASE READ YOUR POLICY**

Printed in U.S.A.

**IMPORTANT**

This policy is not to be presented as proof of insurance to comply with Financial Responsibility Laws. Compulsory Insurance Laws, or Uninsured Motorist Laws in the United States of America or Canada

---

## AMERICAN HOME ASSURANCE COMPANY

(A stock insurance company, herein called the company)

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and of the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**I. Coverage A. Comprehensive - Excluding Collision or Upset:** To pay for any direct and accidental loss of or damage to the automobile, hereinafter call loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, falling aircraft or parts thereof, fire, theft, explosion, earthquake, windstorm, tornado, cyclone, typhoon, hail, water, flood or vandalism shall not be deemed loss caused by collision or upset.

The amount deductible stated in Item 3 of the declarations shall be deducted from each such loss.

**Coverage B. Collision or Upset:** To pay for direct and accidental loss of or damage to the automobile, hereinafter call loss, caused by collision of the automobile with another object or by upset of the automobile.

The amount deductible stated in Item 3 of the declarations shall be deducted from each such loss.

**Coverage C. Marine:** To pay for direct and accidental loss of or damage to the automobile from an external cause, occurring while said automobile is in transit between the ports indicated in the declarations, from the time of delivery of the automobile into the custody of the Steamship Company or Port Authorities until the automobile is landed. This insurance includes the risks of War, Strikes and Riots as defined in American Institute Clauses at the time this policy is issued unless said risks are specifically indicated to be excluded on the declarations.

**Coverage D. Bodily Injury Liability:** To indemnify the insured for all sums which he shall become legally obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

The words "bodily injury," and the word "injury" when referring to bodily injury, shall be deemed to include "sickness or disease."

**Coverage E. Property Damaged Liability:** To indemnify the insured for all sums which he shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.

**Coverage F. Medical Payments:** To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon, entering or alighting from the automobile if the automobile is being used by the named insured or with his permission.

**II. Defense, Settlement, Supplementary Payments:** As respects the insurance afforded by the other terms of this policy under coverages D and E the company shall:

do hereby certify that the foregoing is a full true and correct copy of the ... of the Superior Court of the ...

JUL 1 0 2006

37818 (3/87) AH

Teresita S. Perez

(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of accident or traffic law violation during the policy period, not to exceed the usual charges of surety companies not $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;

(e) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.

The company shall not be obligated under this insuring agreement to pay the costs of bonds or the expenses of investigation, settlement or defense arising out of any criminal action against the insured.

The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

**III. Special Privilege for Immediate Repairs:** The named insured may authorize the repair of any automobile described in Item 4 of the declarations necessitated by damage for which the company may be liable under any one or both of the coverages A and B, provided:—

(a) the estimated cost of repairs does not exceed one hundred and twenty-five dollars ($125.00);

(b) the company is furnished with a detailed estimate of the cost; and

(c) the insured shall give the company every assistance to see that such repair is necessary and the charge reasonable.

**IV. Definition of Insured:** With respect to the insurance for bodily injury and for property damage liability the unqualified word "insured" includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

(a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof.



(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

**V. Automobile Defined, Trailers, Two or More Automobiles, Including Automatic Insurance:**

(a) **Automobile.** Except where stated to the contrary, the word "Automobile" means:

(1) **Described Automobile -** the motor vehicle or trailer described in this policy;

(2) **Utility Trailer** - under coverages D, E and F, a trailer not so described, if designed for use with a private passenger automobile if not being used with another type automobile and if not a home, office, store display or passenger trailer;

(3) **Temporary Substitute Automobile** - under coverages D, E and F, an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(4) **Newly Acquired Automobile** - an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile;

The word "Automobile" also includes, under coverages A and B, its equipment and other equipment permanently attached thereto.

(b) **Semitrailer.** The word "trailer" includes semitrailer.

(c) **Two or More Automobiles.** When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under coverages D and E and separate automobiles as respects limits of liability, including any deductible provisions, under coverages A and B.

**VI. Use of Other Automobiles:** If the named insured is an individual who owns the automobile classified as "pleasure and business" or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile subject to the following provisions

(a) with respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes (1) such named insured, (2) the spouse of such individual if a resident of the same household and (3) any other person or organization legally responsible for the use by such named insured or spouse or an automobile not owned or hired by such other person or organization. Insuring Agreement IV, Definition of Insured, does not apply to this insurance.

(b) this insuring agreement does not apply:

(1) to any automobile owned by, hired as part of a frequent use of hire automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse;

(2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, chauffeur or servant;

(3) to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place;

(4) under coverage F, unless the injury results from the operation of such other automobile by such named insured or spouse or on behalf of either by such chauffeur or servant, or from the occupancy of said automobile by such named insured or spouse;

(5) under coverage D, to injury or death of any person who is named insured.

**VII. General Average and Salvage Charges:** The company with respect to such transportation insurance as is afforded by this policy, shall pay any general average and salvage charges for which the named insured becomes legally liable.

**VIII. Policy Period, Territory, Purpose of Use:** This policy applied only to accidents which occur, and to direct and accidental losses to the automobile which are sustained, during the policy period, while the automobile is owned, maintained and used for the purposes stated as applicable thereto in the declarations and is within the geographical area specified in Item 7 of the declarations. In the event the insured has other insurance covering the same perils insured under this provision, the insurance under this policy shall be excess insurance over any such insurance and the limits of liability under this policy shall be reduced by an amount equal to the limits of liability afforded under such other policy.

**Purposes of Use Defined:** (a) The term "pleasure and business" is defined as personal, pleasure, family and business. (b) The term "commercial" is defined as the transportation or delivery of goods, merchandise or other materials and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in the declarations, including occasional use for personal, pleasure, family and other business purposes. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

## EXCLUSIONS

**This Policy Does Not Apply:**

I. Under any of the Coverages,

(a) while the automobile is used as a public or livery conveyance, unless such use is specifically declared and described in this policy and premium charged therefor;

(b) to any accident or to any loss directly or indirectly arising from or occasioned by or in consequence of war, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), mutiny, civil war, rebellion, revolution, insurrection or military or usurped power. This exclusion does not apply, however, to coverage C unless it is indicated specifically on the declarations that war risks are excluded;

(c) while the automobile is used for commercial traveling, racing, pacemaking, speed-testing or the carriage of goods or samples in connection with any trade or business and use for any purpose in connection with the Motor Trade;

(d) if the insured or any person authorized to drive the automobile does not hold a valid driver's license to drive the automobile;

(e) to any claims or liabilities arising directly or indirectly from Nuclear Fission, Nuclear Fusion or Radioactive Contamination.

II. Under Coverages A, B and C,

(a) under coverages A and B only, to tires unless damaged by fire or stolen or unless such loss be coincident with other loss covered by this policy;

(b) to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy;

(c) to robes, wearing apparel or personal effects;

(d) to loss or damage due to confiscation, nationalization or requisition by or under the order of any government or public or local authority or to loss or damage which occurs subsequent to abandonment or to relinquishment of possession of the automobile, made necessary by order of such authority;

(e) while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy;

(f) under coverages A and B only, to loss or damage caused by riot, strike, riot attending a strike, or civil commotion;

(g) under coverages A and B only, to loss or damage arising while the automobile is being transported by water or is being loaded on, or unloading from any ship, lighter or connecting vessel. This exclusion shall not apply while the automobile is in transit (1) on inland waterways in the countries designated in Item 7 of the declarations, or (2) by sea on a voy-

age not exceeding 65 hours duration under normal conditions, between such countries in Europe and/or Northern Africa as may be designated in Item 7 of the declarations.

III. Under Coverage A and C,

(a) to loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance.

IV. Under Coverages B and C,

(a) to breakage of glass if insurance with respect to such breakage is otherwise afforded.

V. Under Coverages D, E and F,

(a) to liability assumed by the insured under any contract or agreement.

VI. Under Coverages D and E,

(a) while the automobile is used for the towing of any trailer owned or hired by the named insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the named insured and not covered by like insurance in the company.

VII. Under Coverages D and F,

(a) to bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any Workers' Compensation law, plan, or scheme.

VIII. Under Coverage D,

(a) to any obligation for which the insured or any company as his insurer may be held liable under any Workers' Compensation law, plan or scheme;

(b) (1) to bodily injury to or death of any member of the insured's family residing with the insured; (2) to bodily injury to or death of the name insured.

IX. Under Coverage E,

(a) to injury to or destruction of property owned by, rented to, in charge of or transported by the insured.

X. Under Coverage F,

(a) to bodily injury to or death of any person if benefits therefor are payable under any Workers' Compensation law, plan or scheme.

XI. Under Coverages A, B and F,

(a) while the automobile is used in any illicit trade or transportation.

**Attach declaration page along with any endorsements.**
**This policy is not complete unless such declaration and endorsements are attached.**

## CONDITIONS

Conditions 1 to 17 inclusive apply only to the coverage or coverages noted thereunder. Conditions 18 to 23 inclusive apply to all coverages.

**1. Named Insured's Duties When Loss Occurs -** Coverages A, B and C: When loss occurs, the named insured shall:

(a) protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the named insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request;

(b) give notice there of as soon as practicable to the company or to any of its authorized representatives and also, in the event of theft, larceny, robbery or pilferage, to the police or, if within a territory occupied by a military government, to the nearest office of such government but shall not, except at his own cost, offer to pay any reward for recovery of the automobile;

(c) file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement of the named insured setting forth the interest of the named insured and all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss and the descriptions and amounts of all other insurance covering such property.

Upon the company's request, the named insured shall exhibit the damaged property to the company and submit to examinations under oath by anyone designated by the company, subscribe the same and produce for the company's examination all pertinent records and sales invoices, or certified copies if originals be lost, permitting copies thereof to be made, all at such reasonable times and places as the company shall designate.

**2. Notice of Accident - Coverages D, E and F:** When an accident occurs written notice shall be given by or on behalf of the insured to the company or to any of its authorized representatives as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information regarding the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

**3. Notice of Claim or Suit - Coverages D and E:** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**4. (a) Limit of Liability; Settlement Options; No Abandonment - Coverages A, B and C:** The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, of, if the loss is of a part thereof, the actual cash value of such part at time of loss, nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations.

The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced subject, however, to such deductions represented by the amount deductible stated in Item 3 of the declarations, if any, as may be applicable thereof, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company.

**(b) Limit of Liability; F.P.A. Clause - Coverage C:** If the automobile is shipped on deck, this insurance is subject to the following provision "Warranted free of particular average unless caused by the stranding, sinking, burning and/or collision of the vessel; but to pay the insured value of the automobile jettisoned and/or washed overboard, irrespective of percentage."

**5. Limits of Liability - Coverage D:** The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by one person in any one accident; the limit of such liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by two or more persons in any one accident.

**6. Limits of Liability - Coverage E:** The limit of property damage liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one accident.

**7. Limits of Liability - Coverage F:** The limit of liability for medical payments stated in the declarations as applicable to "each person" is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury, including death resulting therefrom, in any one accident.

**8. Limits of Liability - Coverages D, E and F:** The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

**9. Assault and Battery - Coverages D and E:** Assault and battery shall be deemed an accident unless committed by or at the direction of the insured.

**10. Appraisal, Repair, Replacement - Coverages A, B and C:** If the named insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the company, select a competent and disinterested appraiser and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The named insured and the company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

The company shall not be held to have waived any of its rights by any act relating to appraisal.

**11. Assistance and Cooperation of the Insured -**

**Coverages A, B, C, D and E:** The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incure any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

**12. Medical Reports; Proof and Payment of Claim - Coverage F:** As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require.

The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the insured or, except hereunder, of the company.

**13. Payment for Loss; Action Against the Company - Coverages A, B and C:** Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the named insured shall have fully complied with all the terms of this policy, nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy.

**14. Action Against the Company - Coverages D and E:** No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**15. Action Against the Company - Coverage F:** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until thirty days after the required proofs of claim have been filed with the company.

**16. No Benefits to Bailee - Coverages A, B and C:** The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile.

**17. Subrogation - Coverages A, B, C, D and E:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

**18. Other Insurance:** Except under Coverage F, if the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement V or other automobiles under Insuring Agreement VI shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise. Under coverage F, the insurance afforded with respect to other automobiles under Insuring Agreement VI shall be excess insurance over any other valid and collectible medical payments insurance applicable thereto.

If, in order to comply with local statutory requirements, a policy is issued to the named insured providing valid and collectible insurance against a loss covered by this policy, the insurance under this policy shall be excess insurance over such other insurance and the limits of liability under this policy shall be reduced by an amount equal to the limits of liability afforded under such other policy.

**19. Changes:** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part thereof, signed by an authorized representative of the company.

**20. Assignment:** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless canceled, shall, if written notice be given to the company within sixty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) under Coverages D and E, subject otherwise to the provisions of the Insuring Agreement IV, any person having proper temporary custody of the automobile, as an insured, and under coverage F while the automobile is used by such person, until the appointment and qualification of such legal representative but in no event for a period of more than sixty days after the date of such death or adjudication.

**21. Cancellation:** This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premiums shall be computed in accordance with the short rate table and procedure customarily in use by the company. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as as practicable after cancellation becomes effective.

The company's check or the check of its representative similarly mailed or delivered shall be a sufficient tender of any refund or premium due to the named insured.

**22. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the state or country wherein this policy is issued are hereby amended to conform to such statutes.

**23. Declarations:** By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that his policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**In Witness Whereof,** the Company has caused this policy to be signed by its president and a secretary; but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

Elizabeth M. Tuck

*Secretary*

Joseph R. Wiedemann

*President*

# UNINSURED MOTORIST PROTECTION

In consideration of the payment of the premium for this endorsement and subject to all of the terms of this endorsement, the company agrees with the named insured as follows:

RECEIVED

DEC 0 8 2004

CLA... ... ...CE
ADJUSTERS

## INSURING AGREEMENTS

**I.**  **Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles**

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury or property damage sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such uninsured automobiles; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgement against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

## II.  Definitions

(a)  "uninsured automobile" means:

    (1)  an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury and property damage liability bond, or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury or property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder;

    (2)  a hit-and-run automobile as defined; (but the term "uninsured automobile" shall not include:)

        (i)  an insured automobile,

        (ii)  an automobile which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

        (iii)  an automobile which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,

        (iv)  a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle or

        (v)  a farm type tractor or equipment designed for use principaly off public roads, except while actually upon public roads.

(b) "hit-and-run automobile" means an automobile which causes bodily injury or property damage to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such "hit-and-run automobile"; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident.

(c) Occupying. The word "occupying" means in or upon or entering into or alighting from

(d) State. The word "state" includes the District of Columbia, a territory or possession of the United States, and a province of Canada, however, excluding the U.S. Virgin Islands and the Commonwealth of Puerto Rico.

## EXCLUSIONS

This endorsement does not apply:

(a) to bodily injury or property damage to an insured with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefore;

(b) to bodily injury or property damage to an insured while occupying an automobile (other than insured automobile) owned by a named insured or any relative resident in the same household, or through being struck by such an automobile but this exclusion does not apply to the principal named insured or his relatives while occupying or if struck by an automobile owned by an insured named in the schedule or his relatives:

(c) so as to insure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law or any insurer of property:

(d) for property contained in or struck by an automobile (other than an insured automobile) owned by the named insured, any designated insured or any relative resident in the same household as the named insured.



# CONDITIONS

(1) **POLICY PROVISIONS.** The provisions of the policy to which this endorsement is attached are hereby altered to conform with the terms and conditions of this endorsement if in conflict.

(2) **LIMITS OF LIABILITY.**

    (a) The limit of liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages, including damages for care of loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the schedule as applicable to "each accident is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

    (b) any amount payable under the terms of this endorsement because of bodily injury or property damage sustained in an accident by a person who is an insured under this coverage shall be reduced by:

        (1) all sums paid on account of such bodily injury or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage including all sums paid under the Bodily Injury Liability Coverage of the policy,

        and

        (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

    (c) any payment made under this endorsement to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the Bodily Injury Liability Coverage of the policy.

    (d) the company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under the Medical Payments Coverage of the policy.

(3) **TRUST AGREEMENT.** In the event of payment to any person under this endorsement:

    (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

    (b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization of the damages which are the subject of claim made under this endorsement;

    (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

    (d) if requested in writing by the company, such person shall take, through any representative designated by the company, such aation as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person, in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorney's fees incurred by it in connection therewith;

## REJECTION OF
## UNINSURED UNDERINSURED
## MOTORIST COVERAGE

I understand that if I reject uninsured motorist coverage, and if I am injured by a person driving without motor vehicle insurance, I may be unable to recover any significant amount of money to cover the costs of my injuries or of damage to my motor vehicle. I have applied this day for coverage under an automobile liability insurance policy. I and the Company providing such coverage have agreed as follows to delete uninsured motorist coverage from that insurance policy:

1. I elect to completely delete uninsured motorist coverage for all insureds.

2. I elect to completely delete uninsured motorist coverage for the following designated person(s) listed below:

_____

3. California Only
   I elect to delete Uninsured Motorist coverage for property damage coverage but keep Uninsured Motorist coverage for bodily injury.

4. Florida Only
   I elect to select Uninsured Motorist Bodily Injury limit(s) which are lower than my Bodily Injury Liability limit(s) designated on the Declarations.

   I elect to delete Underinsured Motorist coverage in its entirety.

Applicant Signature _____

Date _____ Hour _____ ☐ A.M.
                                                                      ☐ P.M.

The rejection of insurance indicated by the above agreement shall be binding upon every insured to whom such policy or endorsement provisions apply while such policy is in force, and it shall continue to be so binding with respect to any continuation, renewal or replacement of such policy by the name insured, or with respect to reinstatement of such policy within 30 days of any lapse thereof. **DO NOT SIGN THIS AGREEMENT UNLESS YOU HAVE READ AND UNDERSTAND IT.**



**IN THE SUPERIOR COURT**

**OF GUAM**

SHAUNANNETTE D. WATSON and
GEORGE L. WATSON,

       Plaintiffs,

       vs.

GARRY M. PASCOE, AMERICAN
HOME ASSURANCE COMPANY,
and DOE DEFENDANTS 1-10,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. CV318-02

**DECISION and ORDER**

## INTRODUCTION

This matter came before the HONORABLE MICHAEL J. BORDALLO on November 16, 2004, on Defendants Garry M. Pascoe and American Home Assurance Company's Motion for Summary Judgment. Plaintiff was represented by Wayson W.S. Wong. Defendants were represented by Terence E. Timblin. The Court took the matter under advisement. After considering the parties' pleadings and arguments the Court now issues the following Decision and Order.

## BACKGROUND

Plaintiffs allege that on March 13, 2000, Defendant Pascoe negligently collided his vehicle with a vehicle driven by Plaintiff Shaunanette Watson, and seek damages against Defendants for personal injury on behalf of Plaintiff Shaunanette Watson and for loss of consortium on behalf of Plaintiff George L. Watson. Defendant Pascoe was employed as the Acting Fire Chief for Andersen Air Force Base, and claims to have been actively responding to an emergency at the time of the accident. Defendant Pascoe acknowledges that he was driving his personal vehicle at the time. Plaintiff George L. Watson was the registered owner of the vehicle driven by Plaintiff Shaunanette Watson. Following the collision, Plaintiff George Watson filed a property damage claim with Defendant American Home, Defendant Pascoe's

1

the foregoing is a full true and correct copy of the original on file in the office of the Clerk of Court of Guam
Dated at Hagåtña, Guam

JUL 1 0 2006

Teresita S. Perez

ORIGINAL

insurer. Plaintiff George Watson received a total loss settlement on April 14, 2000 in the amount of $5037.00. Plaintiffs filed this action on March 12, 2002. On the same date, Plaintiffs filed a Federal tort claim with the United States Air Force.

On April 7, 2004, Defendants filed a motion for Summary Judgment, contending that Plaintiffs' action is barred by 28 U.S.C. §2679(b)(1) as Defendant Pascoe was a Federal employee acting in the course of his employment. According to Defendants, Plaintiffs' sole remedy is under the Federal Tort Claims Act (FTCA), as both Defendants are immune from suit. Plaintiff filed an opposition on November 3, 2004, asserting that there are genuine issues of material facts as to whether Defendant Pascoe was acting in the course and scope of his employment with the United States. In any event, according to Plaintiffs, Defendant American Home would not be entitled to summary judgment, as it is Defendant Pascoe's personal insurer, and would be liable in the event that Defendant Pascoe is found to not have been acting within the scope of his Federal duties, and it also purportedly insures the United States as an additional insured to Defendant Pascoe's policy. Finally, Plaintiffs contend that Defendant American Home, for itself and as Defendant Pascoe's representative, waived any potential immunity on Mr. Pascoe's behalf by paying for Plaintiffs' Property Damage and Bodily Injury claims.

In their reply dated November 5, 2005, Defendants argue that regardless of whether policy language can be interpreted to include the United States as an additional insured, any right to such coverage rests solely with the United States and may not simply be asserted by Plaintiffs. Further, Defendants argue that the Federal Government cannot be held liable because Plaintiffs purportedly failed to file suit within the statute of limitations.

On November 3, 2004, Plaintiffs filed their Motion for Leave to File First Amended Complaint, moving to amend their complaint to allege that the policy issued by American Home to Defendant Pascoe provided coverage for liability by Mr. Pascoe even in the event he had acted within the scope of his employment. That is, Plaintiffs contend that the United States is an additional insured in the language of the policy issued by Defendant American Home to Defendant Pascoe. On November 5, 2004, Defendants filed their Opposition to Plaintiffs'

Motion for Leave to File First Amended Complaint, countering that the addition of allegations that the United States is an additional insured is futile as any claims against the United States are barred as Plaintiffs purportedly failed to file suit within the time provided by 28 U.S.C. §2401. On November 10, 2004, Plaintiffs filed their Reply Memorandum in Support of Plaintiffs' Motion for Leave to File First Amended Complaint. In it, Plaintiffs cite to <u>Staple v. United States</u>, 740 F.2d 766 (9th Cir. 1984) for the proposition that when a suit is filed in state court within the six-month deadline for filing suit in Federal Court following denial of a claim under the FTCA, and the suit is later removed to Federal Court following scope-of-employment certification, the removed case is timely despite the fact that it was not itself filed in or removed to Federal Court prior to expiration of the six-month deadline.

## DISCUSSION

The Court has jurisdiction over this matter pursuant to Title 7 of the Guam Code Annotated ("G.C.A.") Section 3105.

Summary judgment should be granted when no material facts are in dispute and the movant is entitled to judgment as a matter of law. <u>Iizuka Corporation v. Kawasho International (Guam), Inc.</u>, 1997 Guam 10. The burden is always on the moving party and the court must review the facts in a light most favorable to the non-moving party. <u>Id</u>. If the movant can demonstrate that there exists no genuine issue of material fact, the non-movant cannot merely rely on the averments contained in the complaint, but must produce significant probative evidence tending to support the complaint. <u>Id</u>. To grant summary judgment, there must not be a "genuine issue." There is a genuine issue, if there is "sufficient evidence" which establishes a factual dispute requiring resolution by a fact-finder. <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). However, the dispute must be as to a "material fact." <u>Id</u>. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's ultimate inquiry is

to determine whether the "specific fact" set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. <u>Iizuka</u>, 1997 Guam 10 at ¶ 8 (citation omitted).

### *Procedural Requirements of the Federal Tort Claims Act*

If a federal employee, acting within the scope of his employment commits an act of negligence, a plaintiff's exclusive remedy is a suit against the United States under the Federal Tort Claims Act. <u>U.S. v. Smith</u>, 499 U.S. 160, 111 S.Ct. 1180 (1991). Once a civil action is brought against a federal employee, that employee must deliver any process served upon him to the Attorney General or an attested true copy of any such process to the employee's immediate supervisor or a designated individual, who must then transmit the copies to the United States attorney, the Attorney General and to the head of the Federal Agency with whom the employee is employed. 28 U.S.C.A. §2679(c). At such time, the Attorney General is to determine whether the employee was acting within the scope of his duties, and upon the Attorney General's certification of the same, any action brought in Federal Court is to be deemed an action against the United States, and the United States shall be substituted as the defendant. 28 U.S.C.A. §2679(d)(1). Where the action is brought initially in State Court, upon certification by the Attorney General, said action shall be removed by the Attorney General to Federal Court any time before trial and the United States will likewise be substituted as the Defendant. 28 U.S.C.A. §2679(d)(2). Certification by the Attorney General conclusively establishes that the employee did in fact act within the scope of his or her employment for purposes of the FTCA. 28 U.S.C.A. §2679(d)(2).

Should the Attorney General refuse to certify scope of the employment, the employee may petition the court to certify the same. A copy of any such petition must be served upon the United States in a manner compliant with Rule 4 of the Federal Rules of Civil Procedure. 28 U.S.C.A. §2679(d)(3). Pursuant to the FTCA,

> [i]n the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court

28 U.S.C.A. §2679(d)(3).

On August 12, 2004, Defendant Pascoe was served with the Summons and Complaint in this matter. On August 19, 2004, Defendant Pascoe delivered all process properly received regarding the instant matter to the United States Attorney. However, as of the date of the instant decision, the Attorney General has failed to certify that Defendant Pascoe was acting within the scope of his employment. It is therefore proper for Defendant Pascoe to petition this Court for certification that he was acting within the scope of his employment at the time of the collision. As held in <u>Smith v. Swarthout</u>, in circumstances wherein the Attorney General had not responded to a defendant's attempt to obtain certification and wherein the Defendant moved the Court to dismiss the action against him, the Court is bound to follow the procedures set forth in 28 U.S.C. 2679(d)(3), treat the Defendant's motion to dismiss as a motion for certification and itself resolve whether Defendant was acting within the scope of his employment. 195 Mich.App. 486, 491 N.W.2d 590 (Mich. Ct. App. 1992).

The Court is not averse to treating Defendants' motion for summary judgment in this matter as a motion for certification, particularly since Defendants are in essence moving the Court for a finding that Defendant Pascoe was acting within the scope of his employment. However, pursuant to 28 U.S.C. 2679(d)(3), Defendants are still tasked with serving notice to the

United States, in compliance with the notice requirements of Rule 4 of the Federal Rules of Civil Procedure, so that the United States may properly remove the petition to Federal Court or simply allow this Court to make the determination. In any event, certification by this Court is inappropriate where the United States has not been provided such notice and where the United States has not had the opportunity to remove the petition to Federal Court. As such, Defendants' motion for summary judgment/ for certification must be denied at this time, pending compliance with the procedural requirements of 28 U.S.C.A. §2679(d)(3).

According to 28 U.S.C.A. §2679(d)(4), upon certification, a claim brought in state court must proceed "in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." Pursuant to 28 U.S.C.A. § 1346(b)(1), "the district courts...shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Thus, in the event the Court grants certification that Defendant Pascoe acted within the scope of his employment, the United States may be substituted as Defendant in this matter, and the matter may be properly removed to Federal Court.

*Regarding Defendant American Home*

In the event the United States is substituted as Defendant, naturally Defendant American Home would no longer be liable as Defendant Pascoe's insurer, as Defendant Pascoe is no longer himself a defendant. Whether Defendant American Home may be liable because the United

States is purportedly its additional insured is addressed below in the Court's discussion of Plaintiff's Motion for Leave to File First Amended Complaint.

*Regarding Plaintiffs' Motion for Leave to File First Amended Complaint*

Plaintiffs interpret the language present in the insurance policy issued by Defendant American Home to Defendant Pascoe to mean that the United States is an additional insured so that Defendant American Home is not entitled to Summary Judgment regardless of whether Defendant Pascoe was acting in the scope of his employment during the collision. The actual language contained in the policy, submitted to the Court by Defendant American Home on December 7, 2004, defines "insured" in relevant part as including "the named insured and also...any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." (Defendant's American Home Assurance Company's Submission of Insurance Policy, p. 5).

Defendants, in their opposition to Plaintiff's Motion for Leave to File First Amended Complaint, incorporate by reference Part I of their Reply Memorandum in Support of Defendants' Motion for Summary Judgment, in which Defendants maintain that any right to assert coverage of the United States as an additional insured rests solely with the federal government itself and not the initial plaintiff. Further, Defendants aver that a claim against the Federal Government's purported insurer in this case would be futile as the United States has an absolute defense in that Plaintiffs purportedly failed to file suit within the time provided by 28 U.S.C. §2401.

Plaintiffs counter in their Reply Memorandum in Support of Plaintiffs' Motion for Leave to File First Amended Complaint that pursuant to <u>Staples v. United States</u>, 740 F.2d 766 (9th Cir.

1984), an FTCA suit removed from state court to federal court is not time-barred though removal occurs after the statute of limitations for actions against the United States has run under the FTCA. Further, Plaintiffs point out that pursuant to Guam Law,

> [o]n any policy of liability insurance the injured person...shall have a right of direct action against the insurer within the terms and limits of the policy...Such action may be brought against the insurer alone, or against both the insured and insurer.

22 G.C.A. §18305.

Plaintiffs claim that Defendant American Home would not be entitled to Summary Judgment whether the court finds Defendant Pascoe did or did not act within the scope of his duties as a federal employee. As Plaintiffs stated in their Memorandum in Support of Motion for Leave to File First Amended Complaint, "if [Defendant] American Home is correct [in its claim that Mr. Pascoe was in the course and scope of his employment with the United States at the time of the collision] the United States is an additional insured under the automobile liability policy involved; and therefore, [Plaintiffs] are entitled to bring the same direct action claim against [Defendant] American Home, but on the basis of the United States' liability to them..."

Notwithstanding the fact that Plaintiffs are not moving to add the United States as a party to this action, they are moving this Court to amend the Complaint to add another potential avenue to bring a claim against Defendant American Home in the event this Court finds that Defendant Pascoe was acting in the scope of his duties. However, while the Court agrees that direct suit against an insurer is authorized by Guam Law, the also Court notes that an insurer is entitled to all defenses available to its insured. Thus, if the United States is immune from suit in state court under the FTCA, then Defendant American Home, were the Court to hold that it is an insurer to the United States, would likewise be immune. Plaintiffs cannot circumvent the shared

defenses of an insurer and an insured in actions by an injured claimant simply by not adding the insured as a party.

As described above, pursuant to 28 U.S.C.A. § 1346(b)(1), "the district courts...shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." As this Court would not have jurisdiction over the United States in this matter in the event Defendant Pascoe is found to have been acting within the scope of his duties as a federal employee, this Court likewise would not have jurisdiction over the insurer of the United States in a direct action based on the same claim. Therefore, were this Court to find that the United States is an additional insured of Defendant American Home so as to allow an amendment to the Complaint, suit against Defendant American Home in its capacity as insurer of the United States would not be under this Court's jurisdiction. Further, were the Court to hold that Defendant Pascoe was not acting within the scope of his employment, Defendant American Home would only be an appropriate defendant as to its insurance of Defendant Pascoe, not the United States. In both scenarios, the United States would not be a proper defendant to this matter and, therefore, neither would its insurer. Amendment of the Complaint to this effect would prove futile. Plaintiffs' motion must therefore be denied.

Having found that the Court would not have jurisdiction over any matter against an insurer of the United States, the Court declines to address whether the United States is in fact an additional insured under Defendant Pascoe's policy with Defendant American Home and

whether an action against the United States and its potential insurer removed from this Court to federal court would be timely in the face of the statute of limitations provided in the FTCA.

Finally, the Court disagrees with Plaintiffs that Defendant American Home's payment of the Plaintiffs' property damages and medical expenses in any way evidences a waiver of either Defendant's right to claim immunity or deny liability. As reflected in the very language of the release signed by Plaintiff George Watson, the settlement was "not to be construed as an admission of liability on the part of the party or parties hereby released..." (Defendants' Notice of Motion and Motion for Summary Judgment, p. 9-10). As such, Defendants are entitled to dispute liability and to assert any and all defenses available to them at this time.

## CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion for Summary Judgement/Motion for Certification and **DENIES** Plaintiffs' Motion for Leave to File First Amended Complaint..

SO ORDERED this _18_ day of January, 2006.

Honorable Michael J. Bordallo
Judge, Superior Court of Guam

**Received for Service**
2:40 PM       M
1/18 2004

Marshal, Superior Court
Guam

do hereby certify that the forego...
s a full true and correct copy of ...
original on file in the office of the
clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 10 2006

Teresita S. Perez

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| SHAUNANNETTE D. WATSON and<br>GEORGE L. WATSON,<br><br>                Plaintiffs,<br><br>vs.<br><br>GEORGE M. PASCOE, AMERICAN HOME<br>ASSURANCE COMPANY,<br>and DOE DEFENDANTS 1-10,<br>              Defendant(s).} | CIVIL CASE No. **CV0318-02** |

## Notice of Entry on Docket

To:   WAYSON WONG- Attorney for Plaintiffs
       TERENCE E. TIMBLIN-Attorney for Defendants

On 01-18-06 the **D' ~ISION AND ORDER rendered by the Honorable Judge Michael J. Bordallo** filed 01/1         ~s entered on the Docket in this matter.

01-18-06

RICHARD B. MARTINEZ
Clerk of Court
Superior Court of Guam

By:  James R. Borja
      Deputy Clerk II

## Declaration of Mailing

On 01-18-06, after I had enclosed and sealed a copy of the Notice of Entry of Docket in an envelope addressed to the individual(s) in said notice, I caused the same envelope(s) with postage affixed to be placed in the U.S. mailbox.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

01-18-06

James R. Borja
Declarant

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.
Dated at Hagatna, Guam

JUL 10 2006

Teresita S. Perez